Filed 10/10/13  P. v. Bonaparte CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063109 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD234696) |
| RONNIE LEROY BONAPARTE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Ronnie Leroy Bonaparte appeals the judgment sentencing him to prison after a jury found him guilty of murder. Bonaparte complains the trial court erred by admitting evidence that bolstered the credibility of one prosecution witness and excluding evidence that would have impeached the credibility of another. We affirm.

I.

FACTUAL BACKGROUND

Jonathan Gonzalez was shot and killed in the street outside a taco shop. The fatal wound was inflicted by a .38 caliber bullet fired at close range.

The day before the murder, Tajanae Runnells, Bonaparte's girlfriend, overheard a telephone conversation in which Bonaparte arranged to meet Gonzalez on the day of the murder to buy drugs. At the time, Runnells and Bonaparte were unemployed and living together in a motel room, and she allowed him to drive her great-grandmother's burgundy Cadillac to sell crack cocaine as a source of income. On the day Gonzalez was murdered, Bonaparte and another man left the motel in the Cadillac to meet Gonzalez.

Reyes Rodriguez was inside the taco shop talking to Gonzalez shortly before he was killed. As they were talking, Gonzalez received a telephone call during which Rodriguez heard Gonzalez say: "Is that you on the red Cadillac? I see where you're at. I'll be right there right now."[1] Gonzalez finished the call, exited the taco shop, and

---

[1] A detective subsequently obtained records for Gonzalez's mobile telephone, which showed several calls on the day of the murder to and from a telephone number belonging to Bonaparte. The last of those calls was placed from Bonaparte's number just minutes before Gonzalez was shot.

walked down the street. A few minutes later, Rodriguez heard a gunshot, saw a red car speed away, and saw Gonzalez had been shot.

Alan Wilburn and Warren Mitchell were also inside the taco shop when they heard a gunshot. Wilburn turned in the direction of the gunshot and saw a Black man shove something into his pocket and enter the passenger side of a red Cadillac, which then sped away. When the police showed Wilburn a photographic lineup, he identified the man as Bonaparte. Mitchell also saw a red Cadillac with a Black man in the passenger seat, but he was unable to identify the man.

The day after Gonzalez was killed, Runnells heard about the murder on the news and asked Bonaparte if he killed Gonzalez. Bonaparte told Runnells he was supposed to pay Gonzalez $4,500 for the drugs, but when Gonzalez put the drugs on the trunk of the car, Bonaparte shot him, put the drugs in his pocket, and fled the scene. Bonaparte told Runnells to wash the Cadillac, clean it out, and return it to her great-grandparents. She did so.

The following day, the police seized the Cadillac at the home of Runnells's great-grandparents. A .38 caliber bullet casing was found in the trunk. The police then went to the motel and arrested Bonaparte.

## II.

## PROCEDURAL BACKGROUND

The People charged Bonaparte with murder. (Pen. Code, § 187, subd. (a); subsequent undesignated section references are to this code.) They alleged that in the commission of the murder, Bonaparte intentionally and personally discharged a firearm,

3

proximately causing death or great bodily injury. (§ 12022.53, subd. (d).) The People also alleged Bonaparte had a prior robbery conviction (§ 211), which qualified as a serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c)(19)) and as a strike for purposes of sentencing under the "Three Strikes" law (§ 667, subds. (b)-(i)).

A jury found Bonaparte guilty of first degree murder and also found true the firearm enhancement allegation. Bonaparte then waived his right to a trial on the prior conviction allegations and admitted them. The court sentenced Bonaparte to prison for a determinate term of five years for the prior serious felony conviction (§ 667, subd. (a)(1)), plus consecutive indeterminate terms of 50 years to life for the murder conviction (§§ 190, subd. (a), 667, subd. (e)(1)) and 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)).

## III.

## DISCUSSION

Bonaparte contends the judgment must be reversed because the trial court made two erroneous evidentiary rulings under Evidence Code section 352,[2] one in admitting testimony that supported Wilburn's credibility and the other in excluding evidence that would have undermined Runnells's credibility. As we shall explain, neither claim of error has merit.

---

[2] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

4

A.      *The Trial Court Did Not Err by Admitting Wilburn's Testimony About His Security Clearance*

Bonaparte argues the trial court abused its discretion under Evidence Code section 352 by not excluding Wilburn's testimony that he had a security clearance that allowed him to provide communications to the President and other high-ranking governmental officials.[3]  We reject this argument on both procedural and substantive grounds.

Bonaparte forfeited this claim of error.  A judgment may not be reversed based on erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ."  (Evid. Code, § 353, subd. (a).)  Thus, "[t]o preserve a claim that a trial court abused its discretion in not excluding evidence under Evidence Code section 352, 'a party must make a timely and specific objection when the evidence is offered.'"  (*People v. Harrison* (2005) 35 Cal.4th 208, 230; see also *People v. Holford* (2012) 203 Cal.App.4th 155, 169 [Evid. Code, § 353 requirement of specific objection applies to claim evidence should have been excluded under Evid. Code, § 352].)  Here, Bonaparte objected to the admission of Wilburn's testimony about his security clearance solely on the ground of relevance.  He therefore did not preserve his claim the testimony should have been excluded under Evidence Code

---

[3]      Wilburn testified he worked as a telecommunications specialist before he retired. He further testified:  "I used to do White House communications.  Any time the President, Vice President, or head of state came to my home state, I was on 24-hour call to provide them with any communications they needed."

section 352. (*People v. Valdez* (2012) 55 Cal.4th 82, 138-139; *People v. Alexander* (2010) 49 Cal.4th 846, 905.)

Nevertheless, because Bonaparte asserts his trial counsel's failure to object specifically on the basis of Evidence Code section 352 constituted ineffective assistance of counsel, we exercise our discretion to consider the substance of his claim of error. (See, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 621; *People v. Felix* (2008) 160 Cal.App.4th 849, 858.) As we shall explain, the claim fails.

Bonaparte argues Wilburn's testimony about his security clearance should have been excluded under Evidence Code section 352 because its probative value was substantially outweighed by the probability its admission would create a substantial danger of undue prejudice. Specifically, Bonaparte contends the challenged testimony "was irrelevant to any issue before the jury," but "had the prejudicial effect of impermissibly and significantly bolstering the credibility of Wilburn before the eyes of the jury." We disagree.

Wilburn's testimony about his security clearance had significant probative value. Evidence concerning a witness's character for honesty and veracity is relevant when the witness's credibility is at issue. (Evid. Code, §§ 210, 780, subd. (e); *People v. Abel* (2012) 53 Cal.4th 891, 924-925.) Here, Wilburn was an eyewitness to the events that occurred immediately after the murder, and his trial testimony strongly suggested Bonaparte was the killer. There were some discrepancies between Wilburn's trial testimony and what he had reported to a 911 operator and a police officer on the day of the murder (e.g., whether the Cadillac was an El Dorado or a Seville, whether its

6

windows were up or down, whether Bonaparte was 6 feet or 5'9" tall), which Bonaparte's trial counsel pointed out at trial. Hence, Wilburn's "credibility was a significant issue in this case," and evidence of his security clearance, which indicated he was honest and trustworthy, was relevant. (*Abel*, at p. 925; see also *People v. Mendoza* (2011) 52 Cal.4th 1056, 1085 [prosecutor may introduce evidence supporting witness's credibility on direct examination when prosecutor reasonably anticipates defendant will attack witness's credibility].)

Wilburn's testimony about his security clearance created minimal, if any, danger of undue prejudice. The prejudice that Evidence Code section 352 is designed to prevent is not the harm to a defendant that results from introduction of relevant evidence against him; rather, it is the harm to the defendant that results from introduction of relevant evidence that is likely to induce the jury to reward the People or to punish the defendant based on an emotional reaction to the evidence rather than a logical evaluation of the issue to which the evidence is relevant. (*People v. Howard* (2010) 51 Cal.4th 15, 32.) Wilburn's brief and bland testimony that he had a security clearance that allowed him to provide communications to the President and other high-ranking government officials was not likely to make the jurors sympathetic to the People or hostile to Bonaparte. Rather, the jury was likely to use that testimony (if at all) for the permissible purpose of assessing Wilburn's credibility. Although using the evidence for that purpose might have bolstered the People's case against Bonaparte, it presented no danger of *undue* prejudice within the meaning of Evidence Code section 352. (*Ibid.*; see also *People v. Paniagua*

(2012) 209 Cal.App.4th 499, 517 [undue prejudice "is not synonymous with evidence that is merely damaging to the defendant"].)

In sum, Wilburn's testimony about his security clearance had significant probative value but presented no substantial danger of causing Bonaparte undue prejudice. We therefore reject his claim the testimony should have been excluded under Evidence Code section 352.

B.      *The Trial Court Did Not Err by Excluding Evidence About Runnells's Prostitution*

Bonaparte also argues the trial court abused its discretion under Evidence Code section 352 by refusing to permit him to impeach Runnells with her prior act of prostitution. According to Bonaparte, he was entitled to impeach her with evidence of that conduct under *People v. Wheeler* (1992) 4 Cal.4th 284 (*Wheeler*), because the conduct involved a crime of moral turpitude. After setting forth additional background, we shall explain why the trial court did not prejudicially err by excluding that impeachment evidence.

1.      *Additional Background*

In a motion in limine, the People summarized the criminal history of some of the witnesses they planned to call at trial. The summary stated Runnells had a misdemeanor prostitution citation (§ 647, subd. (b)), with the disposition noted as "unknown." At the hearing on motions in limine, the prosecutor represented that Runnells had been convicted, but the prosecutor did not know what the "ultimate disposition" was. The court ruled Runnells could be impeached with the prostitution conviction.

8

During trial, the prosecutor informed the court that Runnells actually had been convicted not of prostitution but of using offensive words in a public place. (§ 415, subd. (3).) The prosecutor requested the court preclude Bonaparte from using that conviction to impeach Runnells. Bonaparte's trial counsel responded that he was entitled, under *Wheeler*, *supra*, 4 Cal.4th 284, to ask Runnells about the underlying conduct because she had admitted prostitution, a crime involving moral turpitude. The court disagreed that *Wheeler* applied and also perceived "a problem with having a trial within a trial on whether or not she did the act of prostitution." The court cited Evidence Code section 352 and excluded evidence of the conduct underlying Runnells's conviction because its admission would necessitate an undue consumption of time and introduce collateral issues into the pending murder trial.

2.    *Legal Analysis*

Bonaparte bears a heavy burden to show reversible error in the trial court's exclusion of evidence concerning Runnells's prior act of prostitution. A "trial court has discretion to exclude impeachment evidence . . . if it is collateral, cumulative, confusing, or misleading." (*People v. Price* (1991) 1 Cal.4th 324, 412.) On appeal, a ruling excluding impeachment evidence under Evidence Code section 352 is reviewed under the deferential abuse of discretion standard, under which the ruling will not be disturbed unless the record shows the trial court acted in an arbitrary, capricious, or patently absurd manner that caused a manifest miscarriage of justice. (*People v. Lewis* (2001) 26 Cal.4th 334, 374; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great

9

variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*People v. Clark* (2011) 52 Cal.4th 856, 932 (*Clark*).) Bonaparte has presented no persuasive reason for us to reverse the trial court's ruling in this case.

Bonaparte correctly points out that prostitution is a crime of moral turpitude (*People v. Chandler* (1997) 56 Cal.App.4th 703, 709), and that a witness may be impeached with evidence of prior conduct involving moral turpitude even though the conduct did not result in a felony conviction (*Wheeler*, *supra*, 4 Cal.4th at pp. 295-296; accord *Clark*, *supra*, 52 Cal.4th at p. 931). But admission of such evidence is subject to a trial court's discretion under Evidence Code section 352, which "empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*Wheeler*, at p. 296; accord, *People v. Lightsey* (2012) 54 Cal.4th 668, 714.) Here, evidence of Runnells's misdemeanor conduct in agreeing to perform a sex act for money would "not strongly demonstrate moral turpitude, i.e., a '"general readiness to do evil"' [citation], and thus would not have provided the jury much assistance in assessing [her] credibility." (*Lightsey*, at p. 714; see also *Wheeler*, at p. 296 [misdemeanor "is a less forceful indicator of immoral character or dishonesty than is a felony"].) Moreover, introduction of such evidence might have required "a trial within a trial" and diverted the jury's attention away from the main issue of Bonaparte's guilt, as the trial court noted in deciding to exclude the evidence. If Runnells denied that prostitution underlay her misdemeanor conviction, it might have been necessary to obtain testimony from the undercover officer that Runnells had agreed to have sex for money

10

and testimony from the prosecutor in Runnells's misdemeanor case about the disposition of the charge against her, testimony having no direct relevance to the murder for which Bonaparte was being tried. In sum, "[t]his was a routine matter of weighing the evidence's probative value against the probability its admission would 'necessitate undue consumption of time' (Evid. Code, § 352), and the trial court's ruling was both reasoned and reasonable." (*People v. Mills* (2010) 48 Cal.4th 158, 195-196; accord, *Lightsey*, at p. 714.)

In any event, any error in excluding evidence of Runnells's prostitution was harmless. The exclusion of cumulative evidence concerning a witness's credibility is not prejudicial. (*People v. Farley* (2009) 46 Cal.4th 1053, 1105; *People v. Hendrix* (1923) 192 Cal. 441, 450.) Here, the jury heard other evidence that reflected badly on Runnells's character and undermined her credibility. Runnells testified she lived in a motel room with Bonaparte, let him use her great-grandmother's Cadillac so he could deal in illicit drugs, and attempted to obscure his involvement in Gonzalez's murder by washing the Cadillac and returning it to her great-grandparents after the murder. On cross-examination, Runnells admitted she initially lied to the police about Bonaparte's involvement in the murder of Gonzalez, smoked marijuana "pretty much every day," and falsely told Bonaparte she was pregnant with his child. Bonaparte has not shown that cross-examining Runnells about her prostitution "'would have produced "a significantly different impression of [her] credibility."'" (*Farley*, at p. 1105.) Thus, any error in excluding evidence of Runnells's prostitution did not cause "a miscarriage of justice"

11

requiring reversal of the judgment.  (Cal. Const., art. VI, § 13; Evid. Code, § 354; see

*People v. Watson* (1956) 46 Cal.2d 818, 836.)

DISPOSITION

The judgment is affirmed.

_____

IRION, J.

WE CONCUR:

_____

HUFFMAN, Acting P. J.

_____

McINTYRE, J.

12